STATE OF NORTH CAROLINA v. JEFFERY MICHAEL RAWLS

No. 8325SC1160

(Filed 4 September 1984)

1. **Robbery § 4.3— armed robbery—intent permanently to deprive owner of property—sufficiency of evidence**

     The State's evidence was sufficient to show that items of personal property alleged in the indictment were taken with the intent permanently to deprive the owner of them so as to support defendant's conviction of armed robbery where it tended to show that defendant and a companion threatened the victim with a gun as she closed her store; the victim resisted and threw items in a paper bag she was carrying and her purse at her assailants; the victim was forced to the ground in a struggle with her assailants; and the paper bag, items of the victim's personal property and a mask used by one robber were later found some 500 feet from the crime scene.

2. **Criminal Law § 169.6— failure of record to show excluded testimony**

     The exclusion of testimony cannot be considered prejudicial error where the record fails to show what the excluded testimony would have been.

APPEAL by defendant from *Cornelius, Judge*. Judgment entered on 13 May 1983 in Superior Court, CATAWBA County. Heard in the Court of Appeals on 22 August 1984.

*Attorney General Rufus L. Edmisten by Associate Attorney Barbara P. Riley for the State.*

*Appellate Defender Adam Stein by Assistant Public Defender Marc D. Towler for defendant appellant.*

BRASWELL, Judge.

During an armed robbery Mabel Suddreth, part owner of the South Center Quik Stop in Hickory, fought furiously with her attackers, one of whom was the defendant Rawls. His companion, Lester Craft, testified for the State pursuant to a plea agreement. Upon being convicted, Rawls appeals.

Defendant assigns as error the denial of his motion to dismiss, contending that the evidence was insufficient to show that the items of personal property alleged in the indictment were taken with the intent to permanently deprive the owner of them. The defendant also argues a fatal variance between proof and the indictment. We find no error.

According to the testimony of Lester Craft, he and Rawls had made plans two days earlier to rob the store. The day before the robbery Rawls brought a BB pistol to Craft's house, stating that in the dark it would probably scare the woman enough to make her give up the money. Both men lived within two blocks of the Quik Stop.

On the day of the robbery Rawls went to Craft's house with two masks and the gun. They planned to commit the robbery by each approaching a separate side of the store. Rawls was to hold the gun while Craft grabbed the victim and searched her for money.

As she closed the store that night, Ms. Suddreth gathered up several items (including cereal, milk, and feminine products, those later mentioned in the bill of indictment as taken in the robbery) for her personal use. She put the cash from the register in her hip pocket and left the store through the back door at approximately 12:15 to 12:25 a.m. As she walked toward her nearby car, an individual, later identified as the defendant, wearing a Halloween mask confronted her with what appeared to her to be a gun. She started backing up, stating that the person would have to shoot her because she was not giving up her money. A second person then popped up near her car and advanced on her.

Craft, who later admitted he was this second person, grabbed Ms. Suddreth around the waist and looked unsuccessfully in her pockets for the money. They both fell to the ground as they struggled. After Craft extricated himself from the struggle, Rawls hit Ms. Suddreth in the head with the BB gun. Both men fled.

The evidence showed that in resisting the encounter Ms. Suddreth first backed up, swung her key chain to try to divert the gun barrel, then threw the items in the bag she was carrying and her purse at the attackers. She was knocked to the ground and received injuries which required stitches. She never saw the bag or the grocery items again.

Officer Hamby arrived shortly, and in searching the area in the direction in which the assailants had fled, found a mask and one or two other items 400 to 500 feet from the rear door of the Quik Stop. Evidence Technician Holsclaw also went to the area

where Officer Hamby had seen the mask, and found a brown paper bag, a box of New Freedom Sanitary Napkins, and Tampax Tampons about 500 feet from the rear door of the store. Holsclaw also picked up a quart container of milk and a box of cereal near the rear door of the store, and a pack of cigarettes in the lower parking lot near Tenth Avenue South.

Officer Hamby promptly conducted a stakeout in a nearby area. After approximately forty-five minutes he saw two people walking south on Highway 127. One of them was the defendant Rawls.

Craft had testified that as he and Rawls left the scene they went home to see what would happen. Later, they walked toward the Quik Stop store on Highway 127 to see if the victim had dropped the money. A police officer stopped them.

[1]  No money was taken from Ms. Suddreth. After the attackers left, she retrieved her purse with its contents still intact. "This evidence," says the defendant Rawls in his brief, quoted here to better present his argument,

> was clearly insufficient to prove that defendant took or attempted to take the items alleged in the indictment with intent to permanently deprive the victim of them. While the State's evidence did tend to show that defendant intended to permanently deprive Ms. Suddreth of her *money* and attempted to take her *money*, that theory was not alleged in the indictment or submitted to the jury. The proof was therefore fatally at variance with the indictment and failed to establish the theory upon which the case was submitted to the jury.

While the defendant's motion to dismiss properly raised the issue of a fatal variance between the allegations of the indictment and the proof by evidence at trial, our case law holds that not every variance is sufficient to require the allowance of the motion. *State v. Tyndall*, 55 N.C. App. 57, 61, 284 S.E. 2d 575, 577 (1981). It is only "where the evidence tends to show the commission of an offense not charged in the indictment [that] there is a fatal variance between the allegations and the proof requiring dismissal." *State v. Williams*, 303 N.C. 507, 510, 279 S.E. 2d 592, 594 (1981).

The defendant was convicted of a violation of G.S. 14-87. This robbery statute forbids any person who uses, threatens to use, or has in his possession any firearm, whereby the life of a person is endangered or threatened, from unlawfully taking or attempting to take the personal property of another. The indictment in the present case charges that Rawls did feloniously:

> steal, take, and carry away and attempt to steal, take and carry away another's personal property, one quart container of Pet milk; one brown paper bag; one pack of More cigarettes; one box of New Freedom Sanitary napkins; one box of [T]ampax tampons; one box of Rice Crispies of the value of $10 dollars, from the presence, person, place of business, and residence of Mable Irene Sudderth (working at South Center Quik Stop). . . .

Here, a fair reading of the entire indictment shows that it alleges the commission of the offense of robbery with a dangerous weapon in violation of a specific criminal statute, G.S. 14-87. The verdict shows that the defendant was found guilty of robbery with a dangerous weapon. There is no variance between the offense charged and the offense for which Rawls was convicted.

As to the sufficiency of the evidence of the proof of the element that at the time of the taking the defendant intended to deprive Ms. Suddreth of the use of her property permanently, we point out the asportation of the brown paper bag containing items of personal feminine hygiene, as named in the indictment. These items were found, along with a mask used in the incident, approximately 500 feet from the back of the store where the gun was first used to threaten the life of Ms. Suddreth. Before any item was taken, the robbers had first planned to rob her with a "play BB pistol" to "probably scare her enough to make her give up the money." During the robbery, and with a gun pointed at her by Rawls, Ms. Suddreth said: "You will have to shoot, I am not giving up my money."

Ms. Suddreth's ensuing struggle with the robbers and the throwing of the brown paper bag and its contents of grocery and feminine items clearly shows that Rawls' and Craft's use of force and intimidation upon Ms. Suddreth both preceded and was concomitant with the taking of the items. The proof here met the requirement discussed in *State v. Richardson*, 308 N.C. 470, 477, 302

S.E. 2d 799, 803 (1983), "[t]hat . . . the use of force or violence must be such as to *induce* the victim to part with his or her property." (Emphasis in original.) In *Richardson* the defendant's robbery conviction was vacated. The facts show that the victim in *Richardson* was not concerned about anyone trying to rob him, but in self-defense threw his duffle bag in an encounter with the defendant. Two days later the victim discovered that someone had stolen $17 from his wallet plus the duffle bag itself. The facts of our case are distinguishable in that it was the actual use of the gun and its initial threat to human life that induced Ms. Suddreth to part with her property. Except for the use of the gun, she would not have parted with her property.

As indicated in *State v. Jenkins*, 8 N.C. App. 532, 534, 174 S.E. 2d 690, 692 (1970), "In a prosecution for the offense of armed robbery under G.S. 14-87 the offense is complete if there is an *attempt* to take personal property by use of firearms or other dangerous weapons." Citing *State v. Parker*, 262 N.C. 679, 682, 138 S.E. 2d 496, 499 (1964), the *Jenkins* court recognized that " 'it is not of controlling consequence whether the assailants profit much or little, or nothing, from their felonious undertaking.' " *Id.* Thus, when Ms. Suddreth was threatened with a gun in a preplanned robbery, forced to the ground in a physical struggle to keep her money, and had items of her personal property taken some 500 feet from the place of the struggle, the jury could reasonably infer that the defendant and his companion were acting in furtherance of their unlawful purpose to steal in taking the items, and the offense became one of robbery with a dangerous weapon. It is also immaterial that it was not positively established by the evidence that the defendant or his companion took the items which were thrown. As stated in *Jenkins*, "No one was present . . . during the period when the [items] disappeared other than the prosecuting witness and [the defendant and his accomplice], who had made their unlawful purposes well known." *Id.*

The Supreme Court in *State v. King*, 299 N.C. 707, 714, 264 S.E. 2d 40, 45 (1980), a robbery case, recounted that:

> In *State v. Walker*, 6 N.C. App. 740, 171 S.E. 2d 91 (1969), it was held that a sufficient taking was accomplished when the defendant took rings from the jewelry store counter and placed them in his pockets although he threw them on the floor as he fled from the store. There it was stated that:

"[t]he fact that the property may have been in defendant's possession and under his control for only an instant is immaterial if his removal of the rings from their original status was such as would constitute a complete severance from the possession of the owner." *Id.* at 743, 171 S.E. 2d at 93.

Therefore, the removal of the paper bag and its items of Ms. Suddreth's property some 500 feet along the path of departure from the scene is concomitant proof of the felonious intent to permanently deprive the owner of their use. The reasonable inference from the evidence is that the robbers thought that Ms. Suddreth's money might be concealed in the paper bag or in or among the itemized contents. It was reasonable to infer that the robbers took all her property in order to search through it later and keep what they reasonably believed they would find—her money. It is of no consequence on the facts here that no money was actually taken. What was actually taken by force was named in the indictment. The crime was completed. The defendant had a fair trial. As was said by Mr. Rawls' trial attorney (who is different from appellate counsel) after the sentencing: "Your honor, if I may, I have talked to Jeffery about the case and informed him that I felt that there was no error committed in the trial." To this we now concur.

We also find support in ordinary hornbook law. In the treatise Perkins on Criminal Law, 281, fn. 12 (2d ed. 1967), we read:

But the fact that D, who had taken X's wallet at gunpoint, dropped it in X's presence when it was found to be empty does not negate the *intent* to deprive X of his property permanently at the time of the taking and leaves D guilty of robbery.

Perkins further states in this same footnote, citing 4 W. Blackstone, Commentaries *241 as his authority, that "it is clear that the extent of the value of the property taken is unimportant."

[2]    The second assignment of error brought forward questions the exclusion of evidence to show bias on the part of the State's witness, Lester Craft. The defendant contends that the judge erred in refusing to permit defense counsel to inquire about Lester Craft's knowledge of the possible punishment for armed robbery.

The evidence shows that Craft had made a plea arrangement with the State by which he pled guilty to Common Law Robbery in return for his testimony against Rawls. Craft testified he understood he would have to serve ten years pursuant to his bargain.

The transcript filed with the case shows that when the questions, "You know what the penalty for attempted robbery is?" and "You know that you could receive fourteen years for attempted armed robbery?", were asked no answers were placed in the record. Although it would seem that the answers could and would have been relevant on the point of indicating bias or interest in testifying against Rawls, the defendant's failure to have Craft's answers placed into the record and preserved for appeal makes it "impossible for us to know whether the ruling was prejudicial to the defendant or not. . . . We cannot assume that the answer of the witness would have been in the affirmative." *State v. Poolos*, 241 N.C. 382, 383, 85 S.E. 2d 342, 343 (1955). *See also, State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980). Since the record leaves us to speculate as to Craft's answers, we can only say that the appellant has failed to carry his burden of proof of showing prejudicial error.

No error.

Judges HILL and BECTON concur.