STATE OF NORTH CAROLINA v. JAMES E. LEWIS

No. COA03-263

(Filed 20 January 2004)

**1. Appeal and Error— preservation of issues—criminal history—objection not renewed—no objection to other evidence**

A cocaine defendant waived the .right to appeal evidence that one of the officers knew him from the county jail when he did not renew his objection when the question was asked again and did not object to later evidence about defendant's criminal history.

**2. Drugs— sale of cocaine—acting in concert—evidence sufficient**

The evidence was sufficient to allow a jury to reasonably infer that defendant acted in concert to sell cocaine.

**3. Criminal Law— prosecutor's argument—misstatement of fact**

There was no error in a cocaine prosecution where the prosecutor in his closing argument misstated something said by an accomplice. The evidence supported the prosecutor's interpretation of the evidence, and the misstatement did not deny defendant due process.

**4. Indictment and Information— habitual felon—amendment—date and county**

Defendant's motion to quash an habitual felon indictment was properly denied, and there was no error in allowing the State to amend the indictment, where the original incorrectly stated the date and county of a prior conviction, but correctly stated the type of offense and the date of the offense. Defendant was sufficiently notified of the conviction used to support habitual felon status.

STATE v. LEWIS

[162 N.C. App. 277 (2004)]

Appeal by defendant from judgment entered 13 March 2002 by Judge Jack W. Jenkins in Beaufort County Superior Court. Heard in the Court of Appeals 3 December 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John P. Scherer II, for the State.*

*Mary Exum Schaefer for defendant-appellant.*

HUNTER, Judge.

James E. Lewis ("defendant") appeals a judgment based upon jury verdicts convicting him of possession with the intent to sell or deliver cocaine and the sale or delivery of cocaine, as well as being an habitual felon. For the reasons stated herein, we conclude the trial court did not err.

The State presented the following evidence at trial: On 26 September 2002, the Beaufort County Sheriff's Department conducted an undercover drug campaign. Investigator Russell Davenport ("Investigator Davenport") participated in the campaign as a surveillance officer. In that role, he was to operate a van, watch drug transactions, maintain a video camera to tape the transactions, and monitor audio transmitters in an undercover police car. Detective Matthew Heckman ("Detective Heckman") of the New Bern Police Department also participated in the campaign by driving the wired undercover car in an attempt to make crack cocaine purchases.

Detective Heckman and his partner initially went to the Mimosa Trailer Park to purchase crack cocaine, but were unsuccessful. Next, they drove to Washington Arms Apartments and parked in the apartment lot. Once there, the officers noticed a red pick-up truck flashing its lights at them. The driver of the truck, Timothy Jennette ("Jennette"), pulled alongside the officers and asked, "what [are you] looking for[?]" Detective Heckman responded that they were looking for about sixty dollars worth of crack cocaine, to which Jennette responded, "follow me." During that conversation, defendant sat silently in the passenger's side of Jennette's truck. As the officers followed Jennette, they radioed the Beaufort County investigators about the potential drug purchase.

The officers followed Jennette and defendant back to the Mimosa Trailer Park. Jennette got out of his truck and, upon approaching the undercover car, asked the officers for the money so that he could obtain the drugs from another location. When Detective Heckman

refused, Jennette signaled for defendant. Defendant exited the truck, grabbed a circular saw out of the truckbed, walked over to Jennette, and sat the saw on the ground. Jennette said that the saw, used as collateral, and defendant would stay with the officers while Jennette went to get the drugs. Detective Heckman handed the money to Jennette, and Jennette left.

Thereafter, defendant introduced himself to the officers as "James." Defendant told the officers he had not been out of prison long and showed them his Department of Correction identification card. Defendant also told the officers that he and Jennette had seen that no one was willing to sell the officers drugs when they first arrived at the trailer park so he and Jennette had followed the officers when they left. When asked where Jennette had gone to obtain the crack cocaine, defendant responded from "the trailer where you were just at." Defendant further stated, "I tried to stay out of this drug game . . . but I don't give a f—k about it. I just got out of prison."

The officers and defendant conversed for approximately ten minutes before Jennette returned with three tin foil wraps. Detective Heckman opened them and, based on his training and experience, determined the substance contained therein was crack cocaine. Jennette then provided his phone number to Detective Heckman and offered to sell the officers more drugs in the future. Both vehicles left the parking lot, and the officers met up with Investigator Davenport at a predetermined location. The investigator ran a field test on the substance and discovered it tested positive for cocaine. A subsequent test of the substance revealed it contained 0.3 grams of crack cocaine.

Jennette's testimony on behalf of the State generally corroborated the evidence already offered by the State as to the events that occurred in the officers' presence. Jennette also testified that prior to seeing the officers, he had asked defendant to ride somewhere with him. Jennette saw the officers' car when he stopped to visit some friends in Mimosa Trailer Park. Curious to find out what the car occupants wanted, Jennette followed them, and defendant accompanied him. After learning of the officers' desire to purchase drugs, Jennette testified that he told defendant, "I'm going to get something out of this deal." By that statement, Jennette was referring to some crack cocaine that he and defendant could smoke together, something they had done on several prior occasions. Jennette further testified that while he and defendant did subsequently smoke crack cocaine that he kept from the officers, defendant (1) got no money from the deal, (2)

STATE v. LEWIS

[162 N.C. App. 277 (2004)]

did not have physical possession over the crack cocaine, and (3) was not present when Jennette initially asked the officers for the money. However, Jennette testified that defendant was present when the officers first asked to buy crack cocaine and that Jennette was receiving no deal for his testimony. Defendant presented no evidence. Additional facts pertinent to this appeal are included as necessary in analyzing defendant's arguments.

I.

[1] Defendant initially argues that he is entitled to a new trial because the trial court erred in permitting Investigator Davenport to testify that he knew defendant from the county jail. Defendant takes issue with the following portion of the State's direct examination of Investigator Davenport:

Q. During [Detective Heckman's conversation with Jennette], were you able to see in the truck?

. . . .

A. I was able to see Timothy Jennette—and, of course, I only know [defendant] as Scooby and I knew him prior to that when I was a jailer in '93. I used to work in the jail.

MR. RADER: Objection.

THE COURT: On what grounds?

MR. RADER: Your Honor, I think it's—prejudicial here—a prejudicial nature would outweigh anything probative.

THE COURT: Sustained.

Q. Have you had much contact with the Defendant?

A. I know the Defendant from working in the county jail.

Defendant contends the admission of this irrelevant and highly prejudicial evidence should have been stricken from the record and the jury instructed to disregard it. We disagree.

The transcript clearly indicates that defendant did not renew his objection when Investigator Davenport testified a second time that he knew defendant from the county jail. Further, testimony regarding defendant's criminal history was also admitted into evidence, without objection, when Detective Heckman later testified that defendant showed the officers his Department of Corrections identification

card and said that he had just gotten out of prison. Thus, defendant's failure to renew his objection or object to the admissibility of the later offered evidence by Detective Heckman resulted in him waiving the right to raise this argument on appeal. *State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 459 (1989).

## II.

[2] Defendant argues his convictions should be vacated because the trial court erred in denying his motion to dismiss all the charges against him due to insufficiency of the evidence. We disagree.

In order to survive a motion to dismiss in a criminal action, the trial court must view the evidence in the light most favorable to the State, drawing every reasonable inference in favor of the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The evidence considered must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956). "[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." *State v. Wright*, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981) (citations omitted).

In the instant case, defendant was charged with (1) possession with the intent to sell or deliver cocaine, and (2) the sale or delivery of cocaine. To survive a motion to dismiss these charges, "the State must present substantial evidence of (1) defendant's possession of the controlled substance, and (2) his intent to sell or distribute it[,]" as well as the actual sale or distribution of the controlled substance. *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 72-73 (1996); N.C. Gen. Stat. § 90-95(a) (2003). At trial, the State's theory was that defendant acted in concert with Jennette to commit the crimes for which he was charged.

> To act in concert means to act in conjunction with another according to a common plan or purpose. It is unnecessary to show that defendant committed "any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to

constitute the crime pursuant to a common plan or purpose to commit the crime."

*State v. Sams*, 148 N.C. App. 141, 145, 557 S.E.2d 638, 641 (2001) (citation omitted) (quoting *State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979)), *appeal dismissed and disc. review denied*, 355 N.C. 352, 562 S.E.2d 429 (2002).

When taken in the light most favorable to the State, the evidence reasonably supports the conclusion that defendant acted in conjunction with Jennette to possess and sell crack cocaine. Defendant was sitting in the truck beside Jennette when Jennette spoke with the officers about their desire to purchase crack cocaine. Defendant brought over collateral, i.e. the saw, and waited with the officers while Jennette took the officers' money to purchase the drugs. Defendant told the officers that he and Jennette had watched the officers' unsuccessful attempts to buy drugs and had decided to follow them. Defendant also knew where Jennette was getting the crack cocaine and smoked some of it with Jennette following the sale. At no time while defendant was engaged in these acts did he appear confused about what was going on or why he was present. In fact, defendant even told the officers that he had "tried to stay out of this drug game" but no longer gave "a f—k about it."

Nevertheless, defendant contends that, as this Court held in *State v. Yancey*, 155 N.C. App. 609, 612, 573 S.E.2d 243, 245 (2002), *disc. review denied*, 356 N.C. 694, 579 S.E.2d 99 (2003), we should conclude that "[a]lthough the evidence against defendant tends to show that defendant was a drug *user*, none of the evidence conclusively establishes that defendant . . . conspired to [possess and subsequently sell] the drugs" to the officers. In *Yancey*, this Court vacated judgment and awarded a new trial to the defendant after determining that the only definitive evidence linking him to drug trafficking was a drug dealer's inadmissible testimony that the defendant (a customer of the drug dealer's) was an "asset" to the dealer's drug trade. *Id.* at 611-13, 573 S.E.2d at 245-46. However, unlike *Yancey*, this case does not involve whether inadmissible character evidence was prejudicial, but whether a first-hand account of defendant's participation in the sale of crack cocaine by Detective Hackman and Jennette sufficiently supported the denial of defendant's motion to dismiss. We conclude that there was sufficient evidence offered to allow a jury to reasonably infer that defendant acted in concert with Jennette. Thus, the trial court did not err in denying the motion to dismiss all the charges.

III.

**[3]** Next, defendant argues the trial court erred in failing to intervene during the prosecutor's jury argument. Specifically, during the State's direct examination of Jennette, the prosecutor asked:

> Q. Okay. You had—did you have any conversation [with defendant] in the truck on your way [leading the officers back] to Mimosa Trailer Park?
>
> A. No more than I said, *I'm* going to get something out of this deal.

(Emphasis added.) Thereafter, the prosecutor stated during closing argument:

> MR. SCHMIDLIN: . . . Jennette told them—told the Defendant, *we're* going to get something out of this. He had a conversation right before that with the undercover officer—
>
> MR. RADER: Objection, Your Honor.
>
> THE COURT: It's duly noted. Please be careful, Mr. Schmidlin. You may proceed.

(Emphasis added.) Defendant contends that since the evidence failed to establish his participation in the possession and sale of crack cocaine, the prosecutor's misstatement in the closing argument may have resulted in the jury finding defendant guilty as charged. However, defendant does not include any argument or citation of authority in his brief supporting this argument. Failure to do so has been deemed as a defendant abandoning that particular argument. *See State v. Bonney*, 329 N.C. 61, 82, 405 S.E.2d 145, 157 (1991). Nevertheless, a consideration of the merits of defendant's argument establishes the trial court did not err.

It is well settled that arguments of counsel rest within the control and discretion of the presiding trial judge. In the argument of hotly contested cases, counsel is granted wide latitude. While it is not proper for counsel to "travel outside the record" and inject his or her personal beliefs or other facts not contained within the record into jury arguments, or place before the jury incompetent or prejudicial matters, counsel may properly argue all the facts in evidence as well as any reasonable inferences drawn therefrom.

*State v. Worthy*, 341 N.C. 707, 709, 462 S.E.2d 482, 483 (1995) (citations omitted). Inappropriate arguments of counsel will justify a new trial if those arguments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998).

Based on his interpretation of the evidence, the prosecutor in the case *sub judice* argued that defendant actively participated and benefitted in the drug sale. The evidence previously discussed supports that interpretation, especially in light of evidence that Jennette and defendant both smoked the drugs that Jennette had not given to the officers following the sale. Therefore, the prosecutor's misstatement did not result in a denial of defendant's due process or an error by the trial court.

### IV.

**[4]** Finally, defendant argues the trial court erred in denying his motion to quash the habitual felon indictment and permitting the State to amend that indictment. The relevant facts establish that the State moved and was allowed to correct the second conviction set forth in the habitual felon indictment, which mistakenly noted the date and county of defendant's probation revocation, instead of the date and county of defendant's previous conviction for breaking and entering. Moreover, there was also a mistake as to the county seat, which the trial court acknowledged.

N.C. Gen. Stat. § 14-7.3 (2003) provides in part:

An indictment which charges a person with being an habitual felon must set forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.

Additionally, "[a] bill of indictment may not be amended." N.C. Gen. Stat. § 15A-923(e) (2003). An " ' "amendment" is "any change in the indictment which would substantially alter the charge set forth in the indictment." ' " *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984).

Here, although the habitual felon indictment incorrectly stated the date and county of defendant's conviction, it correctly stated the

type of offense for which defendant was convicted and the date of that offense. "It is well established that an indictment is sufficient under the Habitual Felons Act if it provides notice to a defendant that he is being tried as a recidivist." *State v. Williams*, 99 N.C. App. 333, 335, 393 S.E.2d 156, 157 (1990). The indictment at issue sufficiently notified defendant of the particular conviction that was being used to support his status as an habitual felon. Defendant had previously stipulated to that conviction and did not argue he lacked notice of the hearing at trial. Accordingly, the State's requested corrections to the indictment did not constitute an amendment and thus, the trial court did not err in denying defendant's motion to quash.

No error.

Judges McGEE and GEER concur.