STATE OF NORTH CAROLINA v. STEVEN DAVID TAYLOR, Defendant

No. COA09-1360

(Filed 20 April 2010)

**1. Indictment and Information— variance—possession of firearm by felon—habitual felon—date of prior felony not essential element**

The trial court did not err by denying defendant's motion to dismiss the charges of possession of a firearm by a felon and attaining the status of a habitual felon based on a variance in the indictments. The date a defendant committed a prior felony was not an essential element of either charge, and thus the discrepancy of dates in the indictments was not a fatal variance.

**2. Indictment and Information— motion to amend—habitual felon—date of commission of prior felony**

The trial court did not err by granting the State's motion to amend defendant's habitual felon indictment under N.C.G.S. § 14-7.3 regarding the date defendant committed a prior PWISD marijuana felony. The date was neither an essential nor a substantial fact for the habitual felon charge.

**3. Firearms and Other Weapons— possession of firearm by felon—motion to dismiss—sufficiency of evidence—constructive possession**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of a firearm. The evidence was sufficient to permit a reasonable jury to infer that defendant constructively possessed a handgun found in the undergrowth roughly 25 to 30 feet from the door to defendant's cabin.

Appeal by defendant from judgment entered 28 May 2009 by Judge Alan Z. Thornburg in Polk County Superior Court. Heard in the Court of Appeals 24 March 2010.

*Attorney General Roy Cooper, by Assistant Attorney General E. Michael Heavner, for the State.*

*Mercedes O. Chut for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Steven David Taylor appeals from his convictions of possession of a firearm by a felon and having attained habitual felon status. Defendant primarily argues on appeal that the trial court erred in not dismissing both indictments for being facially insufficient to support the charges and due to a fatal variance between the indictments and the evidence at trial. We conclude, however, that the indictments are sufficient to support the offenses alleged and that there was no fatal variance between the indictments and proof at trial. Accordingly, we find no error.

Facts

The State's evidence tended to establish the following facts at trial: On 24 June 2008 defendant was placed on intensive probation after pleading guilty to fleeing/eluding arrest in a motor vehicle and failure to heed blue lights or a siren. He met with his probation officer, Officer Benjamin Lynch, the same day, telling Officer Lynch that he was living in a cabin in the woods on Amy Lane on family property in Polk County, North Carolina. Defendant's cabin is located a short distance down an unmaintained dirt road. The cabin is a one room A-frame style house with no electricity or running water. The cabin is situated at the edge of a clearing in the woods, with a small stream running directly behind it. Roughly 100 to 200 yards through the woods, there are four or five other houses located on a hill on defendant's family's property. Defendant's father lives in one house and

Chris Abril, a former law enforcement officer, lives in another. Between defendant's father's residence and defendant's cabin is a shooting range used by Mr. Abril.

On 29 June 2008, Officer Lynch drove to defendant's cabin to conduct a routine visit. Officer Lynch arrived at defendant's cabin around 8:00 p.m. and saw defendant standing near a fire pit in the clearing around the cabin. When defendant saw Officer Lynch pull up, he "took off" running toward the cabin and went inside. Defendant then came back outside onto the porch of the cabin, holding a cup containing "moonshine." Defendant appeared to be "extremely impaired." Officer Lynch asked defendant why he had run into the cabin and defendant responded: "Nothing." For safety purposes, Officer Lynch patted down defendant, finding in his pocket an old knife and some .45 caliber shells that smelled like they had "just recently [been] fired." He then asked defendant where he had gotten the shells and defendant responded that he had been out shooting that day, but that he had already taken the gun back to his father's house.

Officer Lynch began searching the cabin and found a small box containing what appeared to be marijuana residue and rolling papers. While Officer Lynch continued to search the cabin, defendant started rambling and asking Officer Lynch to "give him a break." Defendant eventually told Officer Lynch that he had a box of ammunition outside the cabin. Defendant took Officer Lynch outside and showed him two boxes of ammunition located approximately a foot from the cabin. The boxes contained .45 caliber shells, some of which had already been fired, and three magazines designed to hold .45 caliber shells. Two of the magazines where fully loaded. After seizing the ammunition and magazines, Officer Lynch searched the immediate area and found a .45 caliber semi-automatic handgun in the undergrowth approximately 25 to 30 feet from the door to the cabin along a trail from the road up to the cabin. After finding the gun, Officer Lynch asked defendant about it and defendant told him that it was his father's and asked if he could take it back to his father's house.

Officer Lynch then took the gun and the ammunition to secure it in his vehicle. Defendant followed Officer Lynch to his vehicle and got into the passenger seat while Officer Lynch was placing the items in the backseat. Defendant kept asking Officer Lynch to "give him a break" and allow him to take the gun back to his father. Because defendant was "acting a little strange," Officer Lynch called the Polk County Sheriff's Department for assistance. Defendant kept looking back at the gun in the backseat and at Officer Lynch's gun, so Officer

Lynch took the gun from the backseat and kept it with him. Concerned for his safety, Officer Lynch told defendant that he would not arrest him for a probation violation.

Officer Lynch radioed the sheriff's department again, asking that they "step . . . up" their response and defendant stated that there were other guns in the woods and that "he knew how to use them." Defendant got mad and stated that he would run away to California where no one could find him. Defendant then threatened to kill himself. When Officer Lynch called the sheriff's department again, defendant got out of the vehicle and ran into the cabin. Defendant soon came back out and showed Officer Lynch a handful of pills, claiming that they were Lortab. Defendant then swallowed the pills, grabbed the knife from the kitchen table in cabin, and "took off running up the path" towards Mr. Abril's and his father's residences. Officer Lynch immediately radioed for an ambulance and began running after defendant. Officer Lynch caught defendant, took the knife away from him, and attempted to place him under arrest. While trying to handcuff defendant, defendant "jerked away" from Officer Lynch and began running back toward his cabin. Officer Lynch ran after defendant, and when defendant tried to dodge Officer Lynch they collided and fell to the ground. Officer Lynch handcuffed defendant and placed him under arrest. After the sheriff's deputies and the ambulance arrived, defendant was taken to the hospital. The woods around defendant's cabin were searched again, but no other weapons were found.

Defendant was charged with possession of a firearm by a felon and having attained habitual felon status. Defendant pled not guilty to the charges and the case proceeded to trial. At the close of the evidence during the firearm possession phase, defendant moved to dismiss the charge for insufficient evidence. The motion was denied. Defendant also moved to dismiss the indictment on the ground that there was a fatal variance between the indictment and the proof at trial, where the judgment for defendant's prior felony of possession with intent to sell or deliver marijuana ("PWISD marijuana") indicated that the offense was committed on 18 December 1992 while the firearm possession indictment alleged that the date of commission was 8 December 1992. That motion was also denied and defendant was convicted of possession of a firearm by a felon.

Prior to presenting evidence in the habitual felon phase of the trial, the State moved to amend the indictment with respect to the date defendant committed the prior PWISD marijuana offense. The trial court granted the State's motion to amend the indictment so that

it alleged that the offense was committed between 8 and 18 December 1992. At the close of the evidence, defendant moved to dismiss the habitual felon indictment on the same ground as his motion to dismiss the firearm possession indictment. That motion was also denied. The jury convicted defendant of having attained habitual felon status and the trial court consolidated the firearm possession and habitual felon convictions into one judgment, sentencing defendant to a presumptive-range term of 151 to 191 months imprisonment. Defendant timely appeals to this Court.

I

[1] Defendant first argues that the trial court erred by denying his motions to dismiss the indictments for possession of a firearm by a felon and having attained habitual felon status. Defendant contends that (1) the indictments were insufficient on their faces to support the offenses for which defendant was convicted as they failed to contain information required by statute and (2) there is a fatal variance between the allegations in the indictments and the evidence at trial.

### A.  Sufficiency of Indictments

Defendant argues that his motions to dismiss the firearm possession and habitual felon indictments should have been granted as they fail to sufficiently allege the date defendant committed a prior felony supporting both indictments. Defendant claims that the facial deficiency of the indictments deprived the trial court of subject-matter jurisdiction to adjudicate the offenses.

Defendant was indicted for possession of a firearm by a felon in violation of N.C. Gen. Stat. § 14-415.1(a) (2009), which prohibits "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in G.S. 14-288.8(c)." The statute also specifies the information to be contained in a proper indictment for possession of a firearm by a felon: "An indictment which charges the person with violation of this section must set forth *the date that the prior offense was committed*, the type of offense and the penalty therefor, and the date that the defendant was convicted or plead guilty to such offense, the identity of the court in which the conviction or plea of guilty took place and the verdict and judgment rendered therein." N.C. Gen. Stat. § 14-415.1(c) (emphasis added).

Defendant was also indicted for having attained habitual felon status under N.C. Gen. Stat. § 14-7.1 (2009), which defines a "habitual felon" as "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof . . . ." *Accord State v. Patton*, 342 N.C. 633, 634, 466 S.E.2d 708, 709 (1996) ("Any person who has been convicted of or pled guilty to three felony offenses is declared by statute to be an habitual felon."). N.C. Gen. Stat. § 14-7.3 (2009) provides in pertinent part:

> An indictment which charges a person with being an habitual felon must set forth *the date that prior felony offenses were committed,* the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.

(Emphasis added.)

The State used defendant's prior felony conviction of PWISD marijuana (92 CRS 1292) in support of both the firearm possession and habitual felon indictments. Both indictments allege that the PWISD marijuana offense occurred on "12/8/1992." However, defendant's PWISD marijuana judgment, which was introduced at trial as evidence of the present charges, identifies "12/18/92" as the date the offense was committed. Based on this discrepancy regarding the commission date of his PWISD marijuana offense, defendant maintains that the firearm possession and habitual felon indictments are insufficient under N.C. Gen. Stat. § 14-415.1(c) and N.C. Gen. Stat. § 14-7.3.

Although "a statute requires a particular allegation, the omission of such an allegation from an indictment is not necessarily fatal to jurisdiction[.]" *State v. Inman*, 174 N.C. App. 567, 569, 621 S.E.2d 306, 308 (2005), *disc. review denied*, 360 N.C. 652, 638 S.E.2d 907 (2006). As the Supreme Court has explained:

> "In determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration. Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory." . . .

While, ordinarily, the word "must" and the word "shall," in a statute, are deemed to indicate a legislative intent to make the provision of the statute mandatory, and a failure to observe it fatal to the validity of the purported action, it is not necessarily so and the legislative intent is to be derived from a consideration of the entire statute.

*State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 661-62 (1978) (quoting 73 Am. Jur. 2d *Statutes* § 19).

With respect to an indictment for possession of a firearm by a felon, this Court has held that "the provision of § 14-415.1(c) that requires the indictment to state the penalty for the prior offense is not material and does not affect a substantial right" as the "[d]efendant is no less apprised of the conduct which is the subject of the accusation than he would have been if the penalty for the prior conviction had been included in the indictment." *State v. Boston*, 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004). This Court has similarly held that N.C. Gen. Stat. § 14-415.1(c)'s requirement that a firearm possession indictment state the date of a defendant's prior felony conviction "is not material and does not affect a substantial right." *Inman*, 174 N.C. App. at 571, 621 S.E.2d at 309.

Applying the rationale in *Boston* and *Inman* to this case, we conclude that the discrepancy regarding the date of commission of defendant's prior felony offense is not material and does not affect a substantial right. Here, the firearm possession indictment specifies the prior felony (PWISD marijuana) and its penalty, the date of defendant's guilty plea, the court in which defendant's plea occurred, the file number of the case (92 CRS 1292), and defendant's sentence. Given this information in the indictment, "[d]efendant is no less apprised of the conduct which is the subject of the accusation than he would have been" if the date of commission of his prior felony offense had been correctly included in the firearm possession indictment. *Boston*, 165 N.C. App. at 218, 598 S.E.2d at 166. "To hold otherwise would permit form to prevail over substance." *Id.*

With respect to defendant's habitual felon indictment, this Court has held that "the date alleged in the indictment is neither an essential nor a substantial fact as to the charge of habitual felon . . . ." *State v. Locklear*, 117 N.C. App. 255, 260, 450 S.E.2d 516, 519 (1994). It is "the fact that another felony was committed, not its specific date, which [i]s the essential question in the habitual felon indictment." *Id.*

Here, defendant's habitual felon indictment provided notice of the three prior felonies being used to support the indictment, the dates the felonies were committed, the jurisdiction in which they were committed, the dates of convictions, the court in which the convictions took place, and the file numbers of the cases. Despite the discrepancy regarding the date defendant committed the prior PWISD marijuana offense, the habitual felon indictment in this case provided defendant with adequate notice of the prior felonies supporting the indictment in order for defendant to prepare a defense. *See State v. Briggs*, 137 N.C. App. 125, 130-31, 526 S.E.2d 678, 681-82 (2000) ("The purpose of an habitual felon indictment is to provide a defendant 'with sufficient notice that he is being tried as a recidivist to enable him to prepare an adequate defense to that charge,' and not to provide the defendant with an opportunity to defend himself against the underlying felonies. . . . [A]n indictment for habitual felon is sufficient if it provides a defendant with notice of his prior felony convictions." (quoting *State v. Cheek*, 339 N.C. 725, 729, 453 S.E.2d 862, 864 (1995)). We, therefore, conclude that the firearm possession and habitual felon indictments were sufficient on their faces to support the offenses of which defendant was convicted.

## B. Fatal Variance

Similar to his argument regarding the sufficiency of the indictments, defendant contends that the discrepancy in the firearm possession and habitual felon indictments and defendant's PWISD marijuana judgment regarding the date defendant committed the prior felony is a fatal variance between the allegations in the indictments and the proof at trial. A motion to dismiss based on a variance "is in order when the prosecution fails to offer sufficient evidence the defendant committed the offense charged." *State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). A variance between the criminal offense charged in the indictment and the offense established by the evidence is, in essence, a failure of the State to establish the offense charged. *State v. Pickens*, 346 N.C. 628, 645-46, 488 S.E.2d 162, 172 (1997). Not every variance, however, is sufficient to require dismissal. *State v. Rawls*, 70 N.C. App. 230, 232, 319 S.E.2d 622, 624 (1984), *cert. denied*, 317 N.C. 713, 347 S.E.2d 451 (1986). "[T]he defendant must show a fatal variance between the offense charged and the proof as to '[t]he gist of the offense.' " *Pickens*, 346 N.C. at 646, 488 S.E.2d at 172 (quoting *Waddell*, 279 N.C. at 445, 183 S.E.2d at 646). In order to be fatal, the variance must relate to an "essential element of the offense." *Id.* The purpose for prohibiting a variance between allega-

tions contained in an indictment and evidence established at trial is to enable the defendant to prepare a defense against the crime with which the defendant is charged and to protect the defendant from another prosecution for the same incident. *State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002).

Where the date of the commission of an offense is not an "essential ingredient of the offense charged," the State may "prove that it was committed on some other date." *State v. Wilson*, 264 N.C. 373, 377, 141 S.E.2d 801, 804 (1965). " 'The failure to state accurately the date or time an offense is alleged to have occurred does not invalidate a bill of indictment nor does it justify reversal of a conviction obtained thereon.' " *Locklear*, 117 N.C. App. at 260, 450 S.E.2d at 519 (quoting *State v. Cameron*, 83 N.C. App. 69, 72, 349 S.E.2d 327, 329 (1986)).

The "gist" of the offense of possession of a firearm by a felon is the present possession of a firearm by a person previously convicted of a felony. N.C. Gen. Stat. § 14-415.1(a). The precise date on which that prior felony was committed is not essential to the charge. *See Inman*, 174 N.C. App. at 571, 621 S.E.2d at 309; *Boston*, 165 N.C. App. at 218, 598 S.E.2d at 166.

Although a status, and not a substantive offense, the purpose of charging a defendant with having attained habitual felon status is to "enhance the punishment which would otherwise be appropriate for the substantive felony which [the defendant] has allegedly committed while in such a status." *State v. Allen*, 292 N.C. 431, 435, 233 S.E.2d 585, 588 (1977). The date of commission of a prior felony offense is not essential to a charge of having attained habitual felon status. *State v. Spruill*, 89 N.C. App. 580, 582, 366 S.E.2d 547, 548 (holding that there was no fatal variance between habitual felon indictment and evidence at trial regarding date of commission of offense as "[t]ime [i]s not of the essence as to this offense"), *cert. denied*, 323 N.C. 368, 373 S.E.2d 554 (1988).

The date on which a defendant committed a prior felony is not an essential element of either possession of a firearm by a felon or having attained habitual felon status. Thus, the discrepancy in the indictments alleging that defendant committed the prior PWISD marijuana felony on 8 December 1992 and the PWISD marijuana judgment stating that the offense was committed on 18 December 1992 is not a fatal variance. The trial court properly denied defendant's motion to dismiss.

II

**[2]** Defendant next argues that the trial court erred in granting the State's motion to amend his habitual felon indictment under N.C. Gen. Stat. § 14-7.3. After the jury found defendant guilty of possession of a firearm by a felon, the prosecutor, over defendant's objection, moved to amend the habitual felon indictment to "expand the date of offense [for defendant's PWISD felony] to 12-8-1992 through 12-18-1992." The trial court granted the motion to amend the indictment as to the date defendant committed the prior PWISD marijuana felony, and copies of defendant's three prior felonies referenced in the indictment were admitted and published to the jury, including the PWISD marijuana indictment indicating that the offense occurred on 18 December 1992.[1]

N.C. Gen. Stat. § 15A-923(e) (2009) provides that "[a] bill of indictment may not be amended." This statute, however, has been interpreted to prohibit only those changes " 'which would substantially alter the charge set forth in the indictment.' " *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984) (quoting *State v. Carrington*, 35 N.C. App. 53, 58, 240 S.E.2d 475, 478, *appeal dismissed and disc. review denied*, 294 N.C. 737, 244 S.E.2d 155 (1978)). "A change in an indictment does not constitute an amendment where the variance was inadvertent and [the] defendant was neither misled nor surprised as to the nature of the charges." *State v. Campbell*, 133 N.C. App. 531, 535-36, 515 S.E.2d 732, 735, *disc. review denied*, 351 N.C. 111, 540 S.E.2d 370 (1999). "[W]here time is not an essential element of the crime, an amendment relating to the date of the offense is permissible since the amendment would not 'substantially alter the *charge* set forth in the indictment.' " *State v. Brinson*, 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994) (quoting *Price*, 310 N.C. at 598-99, 313 S.E.2d at 559)).

With respect to amendments to habitual felon indictments regarding the date a defendant committed a prior felony supporting the indictment, this Court has held that "the date alleged in the indictment is neither an essential nor a substantial fact as to the charge of habitual felon . . . ." *Locklear*, 117 N.C. App. at 260, 450 S.E.2d at 519. "[I]t [i]s the fact that another felony was committed, not its specific date, which [i]s the essential question in the habitual felon indic-

---

1. Defendant's other two prior felonies referenced in his habitual felon indictment—felony breaking and entering and felony fleeing/eluding arrest—are not at issue here as the indictment was not amended with respect to these offenses.

ment." *Id.* The trial court, therefore, may properly permit amendment to a habitual felon indictment to alter the date of commission of an underlying felony under N.C. Gen. Stat. § 15A-923(e).

Here, although the amendment to defendant's habitual felon indictment changed the date of commission of defendant's PWISD marijuana felony, the amendment did not alter the stated offense, the file number of the case, the date on which defendant pled guilty to the charge, or the court in which defendant pled guilty. The indictment in this case provided adequate notice to defendant of the specific felony convictions supporting the charge of his having attained habitual felon status. *See State v. Lewis,* 162 N.C. App. 277, 285, 590 S.E.2d 318, 324 (2004) (holding trial court did not err in amending habitual felon indictment to change date and county of conviction of prior felony where indictment included other information "sufficient[] [to] notif[y] defendant of the particular conviction that was being used to support his status as an habitual felon"). The trial court, therefore, did not err in allowing the State to amend the indictment.

### III

[3] In his final argument on appeal, defendant contends that the trial court erred in denying his motion to dismiss the possession of a firearm by a felon charge for insufficient evidence. An appellate court "reviews the denial of a motion to dismiss for insufficient evidence *de novo.*" *State v. Robledo,* 193 N.C. App. 521, 525, 668 S.E.2d 91, 94 (2008). A defendant's motion to dismiss should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. *State v. Scott,* 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin,* 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

In order to obtain a conviction for possession of a firearm by a felon, the State must establish that (1) the defendant has been convicted of or pled guilty to a felony and (2) the defendant, subsequent to the conviction or guilty, possessed a firearm. *State v. Wood,* 185

N.C. App. 227, 235, 647 S.E.2d 679, 686, *disc. review denied*, 361 N.C. 703, 655 S.E.2d 402 (2007); N.C. Gen. Stat. § 14-415.1(a). Defendant does not challenge his status as a convicted felon—only the sufficiency of the evidence regarding his possession of a firearm. Defendant argues that the State failed to present substantial evidence that he was in possession of the handgun found in the undergrowth roughly 25 to 30 feet from the door to defendant's cabin.

Possession of a firearm may be actual or constructive. *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). Actual possession requires that the defendant have physical or personal custody of the firearm. *Id.* In contrast, the defendant has constructive possession of the firearm when the weapon is not in the defendant's physical custody, but the defendant is aware of its presence and has both the power and intent to control its disposition or use. *Id.* When the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession. *State v. Young*, 190 N.C. App. 458, 461, 660 S.E.2d 574, 577 (2008). Constructive possession depends on the totality of the circumstances in each case. *State v. Glasco*, 160 N.C. App. 150, 157, 585 S.E.2d 257, 262, *disc. review denied*, 357 N.C. 580, 589 S.E.2d 356 (2003).

In this case, the State proceeded at trial on the theory of constructive possession and thus was required to prove the existence of other incriminating circumstances. The evidence presented at trial tends to establish that Officer Lynch went to defendant's cabin for a routine probation visit on 29 June 2008 and that when defendant saw Officer Lynch driving up to the cabin, he "took off toward the house" and ran inside. Officer Lynch frisked defendant for safety reasons and found in his pockets an old knife and several spent .45 caliber shells that smelled like they had "just recently [been] fired." When asked about the shells, defendant told Officer Lynch that he had been "outside shooting that day" but that he had "already got rid of the weapon."

Officer Lynch asked defendant if he had any more ammunition or guns and defendant told him that there was a box of ammunition outside the cabin. Defendant took Officer Lynch outside and showed him two boxes of ammunition within a foot of the cabin. The boxes contained .45 caliber shells, some of which were "used and spent," matching the type found in defendant's pocket. The boxes also contained three magazines for a .45 caliber firearm; two were loaded and one was empty. Officer Lynch then searched the area around where

the ammunition and magazines were located and found a .45 caliber semi-automatic handgun in the undergrowth approximately 25 to 30 feet from the door to the cabin along a trail from the road up to the cabin. Officer Lynch searched this area because defendant ran along the trial into the cabin when Officer Lynch first arrived and Officer Lynch believed defendant would have been able to throw a gun in this area while running into the cabin. After finding the gun, Officer Lynch asked defendant about it and defendant told him that it was his father's and asked if he could take it back to him.

This evidence is sufficient to permit a reasonable jury to infer that defendant possessed the firearm in violation of N.C. Gen. Stat. § 14-415.1(a). *See State v. Jones*, 161 N.C. App. 615, 624, 589 S.E.2d 374, 379 (2003) ("Because defendant acknowledges his possession of the gun in this statement, it effectively disposes of his argument that there is no evidence of possession."), *appeal dismissed and disc. review denied*, 358 N.C. 379, 597 S.E.2d 770 (2004); *Glasco*, 160 N.C. App. at 157, 585 S.E.2d at 262 (concluding circumstantial evidence was sufficient to withstand motion to dismiss charge of firearm possession where defendant was found carrying a bag containing firearm residue and a rifle was found concealed in a pile of tires near where defendant had been recently seen). The trial court, therefore, properly denied defendant's motion to dismiss the charge of possession of a firearm by a felon.

No Error.

Judges CALABRIA and HUNTER, Robert N., Jr. concur.