An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-269

Filed 21 January 2026

McDowell County, Nos. 21CR051229-580, 21CR051230-580, 21CR051231-580, 22CR000301-580

STATE OF NORTH CAROLINA

v.

JUSTIN TYLER BOLLINGER, Defendant.

Appeal by Defendant from judgment entered 18 January 2024 by Judge Reggie E. McKnight in McDowell County Superior Court. Heard in the Court of Appeals 20 November 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Erin Hukka, for the State.*

> *Attorney John E. Ryan III for Defendant–Appellant.*

MURRY, Judge.

Justin T. Bollinger (Defendant) appeals from his convictions for possession with intent to sell or deliver a Scheduled II controlled substance, maintaining a vehicle or dwelling place for controlled substances, and possession of a firearm by a felon. On appeal, Defendant argues that he "was deprived [of] effective assistance of counsel by counsel's failure to move to suppress [his] inculpatory statements" to law

enforcement officers. For the following reasons, we disagree and deny Defendant's ineffective assistance of counsel (IAC) claim.

## I.  Background

Early in 2021, Defendant and his girlfriend, Ashliegh McCraw, leased a property at 992 Fairview Road that included a large metal garage (Fairview Property). McCraw moved a gun safe containing firearms and valuables into the metal garage. Defendant and McCraw also purchased a camper and parked it on the Fairview Property.

On 3 September 2021, officers with the McDowell County Sheriff's Office arrived at the Fairview Property to execute a search warrant for narcotics and stolen firearms. The warrant instructed officers to locate Defendant. When the officers arrived, they observed Defendant exiting the camper. The officers immediately detained Defendant, handcuffed him, and advised him of his rights. Defendant requested an attorney at this point.

After securing the scene, the officers searched the camper and found a small bag containing methamphetamine. Upon finding a gun safe in the metal building, the officers explained to Defendant that they were looking for narcotics and firearms, to which Defendant denied having drugs in his safe. When the officers asked Defendant if he would open the safe for them, he agreed to do so and opened it by typing in a code on a keypad. Within the safe, the officers found seven firearms, one of which formed the basis of the indictment; ammunition; $6,696 in cash; a container with

crystal residue; and multiple documents bearing Defendant's name, including Defendant's car title and mail addressed to him. When speaking to law enforcement about the safe, Defendant stated, "I don't have no dope in my safe," which the officers understood as Defendant "claiming the safe to be his." Additionally, the officers recovered a money counter, packaging materials, unused bags, a digital scale, a smoking pipe, and a lighter from the area around the safe. They also found a bill of sale listing Defendant as the purchaser of the camper.

On 24 October 2024, a grand jury indicted Defendant for trafficking methamphetamine,[1] possession with intent to sell or deliver a Scheduled II controlled substance, maintaining a vehicle or dwelling place for a controlled substance, possession of a firearm by a felon, and obtaining habitual-felon status. On 16 January 2024, this case came on for trial. The State proceeded under the theory of constructive possession for Defendant's possession of firearm by felon. McCraw testified that Defendant had access to the safe and knew the code. She also stated that Defendant had a key to the metal building, could come and go as he wished, and spent a lot of time at the Fairview Property.

Detective Alkire, one of the officers at the scene, testified to Defendant's "exact words" to law-enforcement as, "I don't have dope in my safe." Detective Alkire "noted" Defendant's statement "because[,] at that moment," he believed Defendant had

---

[1] The State dismissed this charge pre-trial.

"claim[ed] the safe to be his." Detective Alkire confirmed this understanding by further "not[ing] that [Defendant] did end up having a digital code, which he entered." Defense counsel did not move to suppress any of Defendant's post-arrest statements to the officers or object to their admission at trial.

On 18 January 2024, the jury convicted Defendant of possession with intent to sell or deliver a Scheduled II controlled substance, maintaining a vehicle or dwelling place for a controlled substance, and possession of a firearm by a felon. Defendant then pleaded guilty to attaining habitual-felon status. The trial court sentenced him to consecutive terms of 23–40 months and 83–112 months imprisonment. Defendant timely appealed.

## II.    Jurisdiction

Generally, IAC claims "should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553 (2001). Because "the cold record reveals that no further investigation is required," this Court has jurisdiction to determine Defendant's IAC claim on direct review. *State v. Fair*, 354 N.C. 131, 166 (2001).

## III.    Analysis

Defendant argues that his trial counsel "deprived [him of] effective assistance of counsel by . . . fail[ing] to move to suppress [his] inculpatory statements" to law enforcement officers. He asserts that the officers interrogated him when they asked him to open the safe and thus compelled him to testify against himself. "[W]ithout

[his] overt and implied admissions" to his "ownership, dominion, and control of the safe containing the guns," including his possession of the safe and his knowledge of its combination and contents, the State "likely . . . could not have prove[n] the possession element in possession of firearm by felon." For the following reasons, we disagree and hold that Defendant received effective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to effective assistance of counsel. *See* U.S. Const. amend. VI; *accord* N.C. Const. art I, § 23, cl. 3 (Counsel Clause). To successfully claim IAC, Defendant must establish both that (1) trial counsel's deficient performance "fell below an objective standard of reasonableness" and (2) such deficient performance prejudiced Defendant's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Allen*, 360 N.C. 297, 316 (2006).

To show that counsel's deficient performance prejudiced his defense, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Allen*, 360 N.C. at 316; *see Strickland*, 466 U.S. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, for which "a different result must be substantial, not just conceivable." *State v. Lane*, 271 N.C. App. 307, 313–14 (2020) (quotation omitted). "[T]hat counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been

a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563 (1985) (quoting *Strickland*, 466 U.S. at 694). Thus, "[e]ven assuming trial counsel's error fell below an objective standard of reasonableness, [the] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Hope*, 223 N.C. App. 468, 479 (2012) (quotation omitted).

This Court has held that an attorney's "failure to file a motion to suppress is not ineffective assistance of counsel where the search or stop that led to the discovery of the evidence was lawful." *State v. Canty*, 224 N.C. App. 514, 517 (2012). Assuming error *arguendo*, Defendant fails to show that, "but for" this error, the jury would have reached a different result. *Braswell*, 312 N.C. at 563 (quoting *Strickland*, 466 U.S. at 694). Put more simply, Defendant would fail to satisfy *Strickland*'s second prong regardless of his ability to satisfy its first. *See Strickland*, 466 U.S. at 688.

Under N.C.G.S. § 14-415.1, a felon may not "possess, or have in his custody, care, or control any firearm." N.C.G.S. § 14-415.1(a) (2025). To obtain a conviction for possession of a firearm by a felon, the State must establish that the defendant (1) has been convicted of or has pled guilty to a felony and (2) possessed a firearm, subsequent to the conviction or guilty plea. *See State v. Taylor*, 203 N.C. App. 448, 458–59 (2010). A defendant has "constructive possession of the firearm when the weapon is not in the defendant's physical custody, but the defendant is aware of its presence and has both the power and intent to control its disposition or use." *Id.* at 459. Accordingly,

the State must "show other incriminating circumstances . . . to establish constructive possession" "depend[ing] on the totality of the circumstances in each case" when a defendant lacks exclusive possession of the firearm. *Id.*

Because the State advanced a theory of constructive possession, it had to prove that Defendant had the "power and intent to control" the disposition or use of the firearm. *Id.* at 458–59. Here, law enforcement officers could have opened the safe upon Defendant's consent or pursuant to the search warrant that included the safe. Either way, the State could have offered evidence tending to show other incriminating circumstances supporting constructive possession, such as Defendant's mail and personal effects found inside the safe. The State also offered McCraw's testimony that Defendant had access to the safe and knew the code. Even without Defendant's statements to law enforcement, the State offered sufficient evidence of constructive possession. Therefore, any failure by defense counsel to move to suppress Defendant's comments would not have "undermine[d] confidence" in the jury's verdict, *Strickland*, 466 U.S. at 694, or created "a reasonable probability" of a different result, *Allen*, 360 N.C. at 316. Thus, Defendant has failed to show prejudice.

## IV.    Conclusion

For the reasons above, this Court holds that Defendant received effective assistance of counsel.

DISMISSED.

Judges GRIFFIN and FREEMAN concur.

Report per Rule 30(e).