An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-536

Filed 1 April 2026

Madison County, Nos. 23CR000085-560, 23CR000144-560, 23CR249350-560

STATE OF NORTH CAROLINA

v.

JENNIFER LEE BLACK-ROBERTS, Defendant.

Appeal by defendant from judgment entered 19 December 2024 by Judge Gary M. Gavenus in Madison County Superior Court. Heard in the Court of Appeals 13 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Mia B. Bass, for the State.*
>
> *Joseph M. Jennings, for defendant-appellant.*

FLOOD, Judge.

Defendant Jennifer Lee Black-Roberts appeals her convictions for possession of methamphetamine, possession of a firearm by a felon, and attaining habitual felon status. On appeal, Defendant argues the trial court: first, erred by admitting speculative and inferential testimony over defense counsel's objection; second, erred by denying Defendant's motion to dismiss for insufficient evidence; and third, plainly

erred by failing to properly instruct the jury as to the circumstances under which it could infer constructive possession of a firearm. Upon careful review, we conclude the trial court: first, did not err by admitting witness testimony, where the testimony consisted of a shorthand statement of fact; second, did not err in denying Defendant's motion to dismiss for insufficient evidence, where the State presented "other incriminating circumstances" to support a finding of constructive possession; and third, did not plainly err in instructing the jury in accordance with North Carolina pattern jury instruction for constructive possession, where the trial court properly instructed the jury it could infer constructive possession based on Defendant's status as the driver of a vehicle.

## I. <u>Factual and Procedural Background</u>

On 3 July 2023, Defendant was indicted for felonious possession of methamphetamine and possession of a firearm by a felon. On 13 November 2023, Defendant was indicted for having attained habitual felon status.

The evidence presented by the State at trial showed that, on the afternoon of 4 March 2023, Defendant was driving a blue, Ford F-350 truck on Calvin Edney Road in Mars Hill, North Carolina. At approximately 2:00 p.m., Officer Bronis Phillips of the Mars Hill Police Department observed the truck cross the double yellow lines of the road multiple times. Officer Phillips started to follow the truck; as he was following the truck, he watched it stop in the middle of the road, accelerate quickly, and continue to swerve. Officer Phillips then activated his blue lights and sirens to

initiate a traffic stop, and the truck stopped in the road.

Defendant and Rick Lamb, the registered owner of the truck, were the only occupants in the truck. When Officer Phillips approached the truck, he asked Defendant, who was in the driver's seat, for identification. In response, Defendant claimed she lost her identification but provided Officer Phillips with her name and birth date. Defendant also told Officer Phillips that she was using the truck to practice her driving so she could get her license back.

After Defendant gave her information to Officer Phillips, he "had the sheriff's office . . . begin running it, trying to find her information[.]" As he was waiting for her information to come back from the sheriff's office, Officer Phillips observed firearm ammunition on the truck's center console. He asked Defendant if there were any firearms in the truck, to which Defendant replied that "she couldn't possess firearms because she was a felon." During their conversation, Officer Phillips also noticed Defendant was "rocking forward and backwards" and kept moving "her legs . . . forward and backwards." Eventually, Officer Phillips observed a handgun "shoved down in between" the driver's seat and the middle console.

For his personal safety, Officer Phillips asked Defendant to step out of the truck. Once Defendant exited the truck, Officer Phillips asked her why she was trying to conceal the firearm, and Defendant replied, "I don't know." Officer Phillips retrieved the firearm that was between the driver's seat and middle console, as well as an extra magazine that was in the driver's door. After retrieving the firearm,

Officer Phillips asked Defendant if there were any illegal items in the car, to which Defendant responded, "marijuana."

Once the sheriff's office confirmed that Defendant was a convicted felon, Officer Phillips placed Defendant under arrest. Defendant then asked Officer Phillips to retrieve some rent money out of her pocketbook located in the backseat of the truck. Officer Phillips found Defendant's pocketbook, along with some other clothing items, on the backseat. When Officer Phillips opened the pocketbook, he discovered "a small glass container that contained a white crystal-like substance." After conducting a presumptive field test on the substance found in the small glass container, Officer Phillips determined that the substance was methamphetamine.

At trial, Officer Phillips testified to the events as described above. As he was testifying about Defendant's behavior during the traffic stop, Officer Phillips stated that Defendant kept "moving forward and backwards in the seat[,]" and was "trying to obstruct [his] view of sight." Defense counsel objected to Officer Phillips's testimony. After the trial court overruled defense counsel's objection, Officer Phillips continued to describe how Defendant's movements appeared to be an effort to "obscur[e his] view of a handgun that [he] later observed between the driver[']s seat and the middle console." Counsel for Defendant did not renew her objection.

Defendant moved to dismiss both charges at the close of the State's evidence and again at the close of all evidence. The trial court denied both motions.

On 15 May 2024, the jury returned a verdict finding Defendant guilty of

possession of methamphetamine, possession of a firearm by a felon, and attaining habitual felon status. Following Defendant's sentencing hearing, the trial court entered two judgments. The first judgment sentenced Defendant to 44 to 65 months' imprisonment for her possession of methamphetamine conviction. The second judgment sentenced Defendant to 110 to 144 months' imprisonment, to run consecutively with the first judgment, for her possession of a firearm by a felon and habitual status conviction.

Defendant gave timely notice of appeal in open court.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to hear an appeal from a final judgment of a superior court pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. <u>Analysis</u>

On appeal, Defendant argues the trial court (A) erred by admitting Officer Phillips's testimony over Defendant's objection; (B) erred by denying Defendant's motion to dismiss for insufficient evidence; and (C) plainly erred by failing to instruct the jury on the circumstances from which it could infer constructive possession of a firearm. We address each argument, in turn.

### A. Lay Opinion Testimony

Defendant first argues the trial court erred by admitting Officer Phillips's testimony over Defendant's objection. Specifically, Defendant asserts Officer Phillips's testimony regarding Defendant's behavior consisted of inadmissible

speculative testimony in violation of Rule 602 and inadmissible opinion testimony by a lay witness in violation of Rule 701. We disagree.

### *1. Preservation*

As a threshold issue, the State argues this issue is not preserved for appellate review. Specifically, the State argues Defendant's initial objection to Officer Phillips's testimony was not sufficient to properly preserve this issue for appellate review because, after the trial court overruled defense counsel's objection, "Officer Phillips continued to present the same or substantially similar testimony during direct and cross examination, without further objection from defense counsel." In response, Defendant argues this issue is preserved because she timely objected and because pursuant to N.C.G.S. § 15A-1446(d)(10), she did not need to renew her objection.

"In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420 (1991) (citing N.C. R. App. P. 10(b)(1)). "To be timely, an objection to the admission of evidence must be made at the time it is actually introduced at trial." *State v. Corbett*, 376 N.C. 799, 825 (2021) (citation omitted).

A defendant waives her right to raise an evidentiary issue on appeal "[w]here evidence is admitted over objection[,] and the same evidence has been previously admitted or is later admitted without objection, [since] the benefit of the objection is lost." *State v. Alford*, 339 N.C. 562, 570 (1995). "An objecting party[, however,] does

not waive its objection to evidence the party contends is inadmissible when that party seeks to explain, impeach, or destroy its value on cross-examination[.]" *State v. Anthony*, 354 N.C. 372, 408 (2001). Further, under N.C.G.S. § 15A-1446(d)(10), appellate review is preserved in the absence of a party's renewed objection where the party challenges the "[s]ubsequent admission of evidence involving a specified line of questioning when there has been an improperly overruled objection to the admission of evidence involving that line of questioning." N.C.G.S. § 15A-1446(d)(10) (2023).

Here, Defendant correctly points out defense counsel immediately objected to Officer Phillips's testimony regarding Defendant's behavior during the State's direct examination, which included:

> Q. . . . did you have any other, get any other information from her at that time or make any other observations about her or the vehicle she was in?
>
> A. She'd stated that she was [in] the process of getting her driver[']s license back and that she was trying to learn to drive that vehicle. . . . And as I was making contact with her, I noticed in the middle console, uh, ammunition.
>
> Q. When you say ammunition, you mean--
>
> A. Bullets.
>
> Q. Bullets? And based on that observation, what, if anything, did you do?
>
> A. I asked if there was [sic] any firearms in the vehicle.
>
> Q. Was she able to advise you as to whether or not there were any?
>
> A. She told me that she couldn't possess firearms because

she was a felon.

Q. All right. What happened next?

A. As I was waiting for the information to come back from the sheriff's office, I did notice how she kept moving forward and backwards in the seat, uh, trying to obstruct my view of sight.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

Q. ([COUNSEL FOR THE STATE]) Describe what you mean when you say she was moving back and forth, trying to obscure your vision.

A. She was constantly doing this in the driver['s] seat (indicated).

Q. Rocking forward and backwards?

A. Yes, sir.

Q. Was there any other movement that she was making?

A. Her legs were going forward and backwards as well.

Q. Okay. And you said it appeared to be an effort to obscure some view of yours?

A. Yes, sir.

Q. What part of your view was it obscuring?

A. It was obscuring my view of a handgun that I later observed between the driver[']s seat and the middle console.

Defendant's behavior was not discussed again until defense counsel attempted to explain and discredit Officer Phillips's testimony on cross-examination:

Q. And so you asked my client if there were any firearms in the vehicle and she said just, frankly, or no, or I'm not allowed to be around firearms, correct? I'm a felon. She said those words, right?

A. Yes, sir, she made that statement.

. . . .

Q. [] Do you have any reason to suspect she was lying about that statement?

A. Yes, sir.

Q. And what is that?

A. The fact that she was trying to conceal it with her, uh, by moving forward and backwards, rocking in the vehicle.

Q. Okay, so you're describing that action as, you're making a conclusion that she was trying to conceal it, but what exactly was she doing? You said she was rocking back and forth.

A. Yes, sir. I'd actually asked her why she was trying to conceal it.

Q. But you said she was rocking back and forth, right?

A. Sorry?

Q. You said she was rocking back and forth.

A. Yeah, her body, going back and forth in the seat.

Q. Is that consistent with somebody that perhaps was nervous?

A. Typically after a vehicle stop, that nervousness subsides a great deal. On the initial approach people can become nervous, obviously, with blue lights behind them, but typically the longer you're sitting there talking to them and explaining things, that nervousness will subside.

Q. Okay, then how long does it normally take for nervousness to subside?

A. Once you introduce yourself it doesn't take very long.

Q. But you admitted that she admitted that she didn't have a license, right?

A. Yes, sir.

Q. And she was driving the vehicle.

A. Yes, sir, she was.

Q. And she admitted there was, at some location in the vehicle, marijuana, right?

A. Yes, sir, that was later.

Q. But she admitted those things.

A. Yes, sir.

Q. Would she have reason to be nervous about that? Are those violations of North Carolina criminal law?

A. Yes, they are violations.

Contrary to the State's contention, defense counsel's attempt to explain Officer Phillips's testimony on cross-examination did not waive her objection to the admission of Officer Phillips's testimony regarding Defendant's behavior. *See Anthony*, 354 N.C. at 408.

As such, we are left with defense counsel's sole objection to Officer Phillips's testimony, which, as the State concedes, was a timely objection to Officer Phillips's statement. *See Corbett*, 376 N.C. at 825. Any further questions regarding Defendant's behavior would be preserved as a matter of law if the objection was erroneously

overruled. *See* N.C.G.S. § 15A-1446(d)(10) (2023). We need not address N.C.G.S. § 15A-1446(d)(10), however, because defense counsel immediately objected to Officer Phillips's testimony that Defendant was trying to obscure his view. *See Corbett*, 376 N.C. at 825 (holding the defendants' timely objection to blood spatter evidence preserved argument on appeal even though the defendants did not object throughout the witness's testimony). Therefore, this issue is preserved for our appellate review. *See Eason*, 328 N.C. at 420.

### 2. *Officer Phillips's Testimony*

Defendant argues the trial court impermissibly overruled her objection because Officer Phillips's testimony regarding Defendant's efforts to obscure his view of the handgun was inadmissible under Rule 602, as it was "mere speculation[,]" and under Rule 701, as Officer Phillips offered an opinion for which no foundation was laid. We disagree.

Ordinarily, this Court "review[s] a trial court's ruling on the admissibility of lay opinion testimony for abuse of discretion." *State v. Belk*, 201 N.C. App. 412, 417 (2009); *State v. Washington,* 141 N.C. App. 354, 362 (2000) ("[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion."). "An abuse of discretion results when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Whaley*, 362 N.C. 156, 160 (2008) (citation and internal quotation marks omitted). "In our review, we consider not whether we might disagree with the trial court, but

whether the trial court's actions are fairly supported by the record." *State v. Williams*, 363 N.C. 689, 702 (2009).

Rule 602 of our Rules of Evidence prohibits a witness from testifying "to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C.G.S. § 8C-1, Rule 602 (2023). Generally, "[p]ersonal knowledge includes what a witness saw; what a witness heard; what a witness smelled; what a witness feels, knows, or believes regarding his or her own mind; and what a witness learns from other reliable sources[.]" *State v. Mitchell*, 270 N.C. App. 136, 140–41 (2020) (citation modified). "The purpose of Rule 602 is to prevent a witness from testifying to a fact of which he has no direct personal knowledge." *State v. Cole*, 147 N.C. App. 637, 645 (2001). Thus, "testimony that is mere speculation is inadmissible[,]" *State v. Garcell*, 363 N.C. 10, 36 (2009), and "a lay witness generally may not testify as to the contents of another person's mind without providing a foundation to support that testimony[,]" *Mitchell*, 270 N.C. App. at 141 (concluding the trial court erred in allowing a witness to testify that the defendant knew her brother was planning a shooting because the State failed to lay a sufficient foundation establishing how the witness knew this information).

Relatedly, under Rule 701 of our Rules of Evidence, when a lay witness's statement is in the form of an opinion or inference, his statement "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a

fact in issue." N.C.G.S. § 8C-1, Rule 701 (2023). "When questioning calls for testimony based on opinion or inference, a foundation must first be laid that the testimony is rationally based on the lay witness's perception." *Mitchell*, 270 N.C. App. at 144.

Our Supreme Court, however, has interpreted Rule 701

> to allow evidence which can be characterized as a shorthand statement of fact, or, in other words, the instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time[.]

*State v. Roache*, 358 N.C. 243, 293–94 (2004) (citations and internal quotation marks omitted); *see State v. McVay*, 174 N.C. App. 335, 339 (2005) (holding various law enforcement officers' testimony that the defendant "tried to kill" another officer was admissible as a shorthand statement because their statements were based on their perceptions and the impact of those perceptions); *State v. Johnston*, 344 N.C. 596, 609 (1996) (holding the witness's testimony that the defendant "was going to do something" was admissible as a shorthand statement because it was an instantaneous conclusion based on the witness's observation of "a variety of facts"). Thus, "[o]pinion evidence as to the demeanor of a criminal defendant is admissible into evidence." *State v. Shoemaker*, 334 N.C. 252, 259 (1993) (citation omitted).

Here, the State's questions were designed to ascertain what Officer Phillips observed after he initiated the traffic stop and how he discovered the firearm. Officer Phillips's testimony that he noticed Defendant "kept moving forward and backwards

in the seat, . . . trying to obstruct [his] view of sight" was admissible because it was based on what he observed. *See Mitchell*, 270 N.C. App. at 140–41. Further, the portion of Officer Phillips's testimony that Defendant was "trying to obstruct [his] view of sight" was admissible as a shorthand statement of fact because it was based on his perception of Defendant's demeanor, Defendant's admission "that she couldn't possess firearms because she was a felon[,]" and his observation of ammunition on the center console. *See McVay*, 174 N.C. App. at 339; *see also Johnston*, 344 N.C. at 609. The description of Defendant's behavior also explained to the jury how Officer Phillips discovered the firearm that was "between the driver[']s seat and the middle console." Therefore, the trial court did not abuse its discretion by allowing Officer Phillips to testify regarding Defendant's behavior.

## B. Motion to Dismiss

Defendant next argues the trial court erred by denying her motion to dismiss the charge of possession of a firearm by a felon due to insufficiency of evidence. Specifically, Defendant claims the State failed to show that she constructively possessed the firearm found in the truck. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62 (2007). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Kennedy*, 276 N.C. App. 381, 383 (2021) (citation omitted).

"When ruling on a defendant's motion to dismiss, the trial court must

determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *Smith*, 186 N.C. App. at 62. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78 (1980). Additionally, "[w]hen considering a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from that evidence." *State v. Barnett*, 141 N.C. App. 378, 382 (2000), *aff'd,* 354 N.C. 350 (2001). The trial court "is concerned only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence." *State v. Lowery*, 309 N.C. 763, 766 (1983). Thus, if the trial court determines there is substantial evidence "to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied. This is true, even if the evidence likewise permits a reasonable inference of the defendant's innocence." *State v. Butler*, 356 N.C. 141, 145 (2002) (citations and internal quotation marks omitted). "In borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Blagg*, 377 N.C. 482, 489 (2021) (citation omitted).

Under N.C.G.S. § 14-415.1(a), "[i]t is unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in the person's custody, care, or control any firearm or any weapon[.]" N.C.G.S. § 14-415.1(a) (2023). To establish

the crime of possession of a firearm by a felon, the State must prove the following two elements: "(1) [the] defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Wood*, 185 N.C. App. 227, 235 (2007). The parties in the instant case stipulated to the fact that Defendant had been convicted of a felony in May 2016. As such, the only element we must consider is possession.

"Possession of a firearm may be actual or constructive." *State v. Taylor*, 203 N.C. App. 448, 459 (2010). This Court has previously explained the difference between actual and constructive possession of a firearm:

> Actual possession requires that the defendant have physical or personal custody of the firearm. In contrast, the defendant has constructive possession of the firearm when the weapon is not in the defendant's physical custody, but the defendant is aware of its presence and has both the power and intent to control its disposition or use. When the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession. Constructive possession depends on the totality of the circumstances in each case.

*Id.* at 459 (citations omitted). "In the context of a car, a defendant does not have exclusive possession of a car if the car has other occupants." *State v. Livingston*, 290 N.C. App. 526, 529 (2023) (citing *State v. Bailey*, 233 N.C. App. 688, 691 (2014)). Thus, "the State is required to show other incriminating circumstances in order to establish constructive possession." *Taylor*, 203 N.C. App. at 459. In determining whether other incriminating circumstances support a finding of constructive possession, this Court considers the following factors:

> (1) the defendant's ownership and occupation of the property . . . ; (2) the defendant's proximity to the contraband; (3) indicia of the defendant's control over the place where the contraband is found; (4) the defendant's suspicious behavior at or near the time of the contraband's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the contraband.

*State v. Chekanow*, 370 N.C. 488, 496 (2018). "No one factor controls, and courts must consider the totality of the circumstances." *Id.*

Importantly, however, this Court has held that, even if a defendant has nonexclusive control over a vehicle, the defendant's "status as the driver is sufficient to give rise to an inference of possession." *See State v. Wirt*, 263 N.C. App. 370, 376 (2018) (citing *State v. Best*, 214 N.C. App. 39, 53 (2011)); *see also State v. Mitchell*, 224 N.C. App. 171, 178 (2012) ("Power to control the vehicle is sufficient evidence from which it is reasonable to infer possession." (citation and internal quotation marks omitted)). Further, "[a] situation where a passenger in a vehicle could have moved or hidden the contraband within the vehicle does not contradict a defendant's control of the vehicle." *State v. Baublitz, Jr.*, 172 N.C. App. 801, 810 (2005) (citation omitted). "Where the driver is in control of the car . . . and the controlled substance is found in the car . . . such evidence is sufficient to withstand motion for dismissal." *State v. Rogers*, 32 N.C. App. 274, 277 (1977).

In the instant case, as the State concedes, Defendant did not have exclusive possession of the truck in which Officer Phillips found the firearm. *See Livingston*, 290 N.C. App. at 529. Although Defendant did not have exclusive possession of the

truck, her status as the driver of the truck "is sufficient to give rise to an inference of possession[.]" *See Wirt*, 263 N.C. App. at 376; *Mitchell*, 224 N.C. App. at 178; *Baublitz*, 172 N.C. App. at 810.

Moreover, here, the State presented additional "incriminating circumstances" from which a reasonable juror could conclude Defendant constructively possessed the firearm. *See Taylor*, 203 N.C. App. at 459. First, Defendant, as the driver, was in close proximity to the firearm that had been shoved down between the driver's seat and the center console. Second, Officer Phillips testified that Defendant was "surrounded by components of this firearm[,]" as the firearm was "on her right side, the one with the mag[azine] inside it as well as the loaded round, and . . . the spare magazine was on her left side." Third, although Defendant may have been nervous about being pulled over while driving on a suspended license, she told Officer Phillips, when asked, that she didn't know why she was trying to conceal the firearm from him. Despite some of this evidence possibly supporting "a reasonable inference of the defendant's innocence[,]" there was substantial evidence, when viewed in the light most favorable to the State, to support a finding that Defendant constructively possessed the firearm. *See Butler*, 356 N.C. at 145. As such, the trial court did not err in denying Defendant's motion to dismiss.

### C. Jury Instructions

Lastly, Defendant argues the trial court plainly erred by failing to instruct the jury on the circumstances in which it could infer constructive possession. Specifically,

Defendant contends the jury instructions were incomplete and misled the jury to believe it could "infer constructive possession based solely on [D]efendant's position in the driver's seat" because the trial court did not instruct the jury to consider "other incriminating circumstances."

Defendant concedes she did not object to the allegedly erroneous jury instructions at trial; accordingly, we review the trial court's jury instructions for plain error. *See State v. Collington*, 375 N.C. 401, 411 (2020). Plain error arises when a trial court makes a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied,* 459 U.S. 1018 (1982)). Under the plain error rule, the defendant "must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518 (2012) (citation modified). "In other words, the appellate court must determine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant." *State v. Walker*, 316 N.C. 33, 39 (1986) (citing *State v. Black*, 308 N.C. 736, 741 (1983)).

When considering an alleged error in jury instructions, "[t]his Court reviews jury instructions contextually and in [their] entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable

cause to believe the jury was misled or misinformed[.]" *State v. Blizzard*, 169 N.C. App. 285, 296–97 (2005) (citation and internal quotation marks omitted). The purpose of a jury instruction "is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict." *State v. Smith*, 360 N.C. 341, 346 (2006) (citation omitted). As this Court has previously recognized, the North Carolina Pattern Jury Instructions are "[t]he preferred method of instructing the jury[.]" *State v. Solomon*, 117 N.C. App. 701, 706 (1995). "Jury instructions in accord with a previously approved pattern jury instruction provide the jury with an understandable explanation of the law." *State v. Ballard*, 193 N.C. App. 551, 555 (2008) (citation omitted).

Here, the trial court instructed the jury regarding constructive possession as follows:

> A person has constructive possession of a substance and/or an article if the person does not have it on the person but is aware of its presence and has, either alone or together with others, both the power and intent to control its disposition or use. A person's awareness of the presence of the substance and/or the article and the person's power and intent to control its disposition or use may be shown by direct evidence or it may be inferred from the circumstances.

> If you find beyond a reasonable doubt that a substance and/or an article was found in close physical proximity to the defendant, that would be a circumstance from which, together with other circumstances, you may infer that the defendant was aware of the presence of the substance

> and/or the article and had the power and intent to control its disposition or use. However, the defendant's physical proximity, if any, to the substance and/or the article does not by itself permit an inference that the defendant was aware of its presence or had the power or intent to control its disposition or use. Such an inference may be drawn only from this and other circumstances which you find from the evidence beyond a reasonable doubt.

> If you find beyond a reasonable doubt that an article was found in a vehicle and that the defendant exercised control over that vehicle, whether or not the defendant owned it, this would be a circumstance from which you *may infer* that the defendant was aware of the presence of the article and had the power and intent to control its disposition or use.

(Emphasis added.) This language tracks the applicable pattern jury instruction for constructive possession. *See* N.C.P.I.–Crim. 104.41. Nonetheless, Defendant argues the jury instructions were incomplete because footnote one of N.C.P.I.–Crim. 104.41 implicitly requires the trial court to instruct the jury that constructive possession could not be inferred without "other incriminating circumstances[.]" The footnote directs the trial court to four cases "[w]here the doctrine of constructive possession involving exclusive or nonexclusive control is involved[.]" *See* N.C.P.I.–Crim. 104.41. n.1.

This Court addressed a strikingly similar argument in *Wirt*. In *Wirt*, the defendant appealed his conviction of possession of a firearm by a felon and argued, on appeal, that the trial court misled the jury by omitting "language articulating the additional evidence rule as described in the footnote of the pattern jury instructions."

263 N.C. App. at 378. In addressing the defendant's argument, we distinguished the four cases cited in the footnote on the basis that none of the cases "involve inferring possession by the driver of a vehicle." *Id*. at 378–79. Rather, we concluded that the facts of the case were more analogous to *Mitchell* and held that the trial court properly instructed the jury regarding constructive possession. *Id*. at 379. Although the jury instructions accurately stated the law for constructive possession, we assumed *arguendo* that the trial court erred by omitting the additional evidence rule and proceeded to examine the incriminating circumstances the State had presented at trial. *Id*. We subsequently concluded all the evidence—including the defendant's status as the driver—could have led a reasonable juror to believe the defendant constructively possessed the firearm. *Id*. Further, the trial court specifically instructed the jury that it may, but was not required to, find constructive possession based on the defendant's status as the driver. *Id*. As such, we held there was no reversible error because the trial court "correctly instructed the jury that [the d]efendant's status as the driver was sufficient to support an inference of constructive possession, and the jury was presented with additional evidence to consider that it could infer constructive possession[.]" *Id*.

Similar to the jury instructions in *Wirt*, the jury instructions in the instant case did not include an instruction regarding the need to find "other incriminating circumstances." *See id*. at 377–78. But, also like *Wirt*, the jury instructions here accurately stated the law for constructive possession and informed the jury that it

was not required to find constructive possession based on Defendant's status as the driver. *See id.* at 379. Further, the State in this case presented evidence of other incriminating circumstances from which the jury could reasonably conclude Defendant constructively possessed the firearm, including the position of the firearm between Defendant and the center console and her nervous behavior. Thus, even if the instructions had been erroneous, Defendant has not shown that this assumed "error had a probable impact on the jury's finding that the defendant was guilty[.]" *See Lawrence*, 365 N.C. at 518 (citation modified). Consequently, we hold the trial court did not plainly err by failing to instruct the jury on the circumstances in which it could infer constructive possession.

## IV. <u>Conclusion</u>

Upon careful review, we conclude the trial court did not err by admitting witness testimony, where the testimony consisted of a shorthand statement of fact; did not err in denying Defendant's motion to dismiss for insufficient evidence, where the State presented "other incriminating circumstances" to support a finding of constructive possession; and did not plainly err in instructing the jury in accordance with the North Carolina pattern jury instruction for constructive possession, where the trial court properly instructed the jury it could infer constructive possession based on Defendant's status as the driver of a vehicle.

NO ERROR.

Judges STROUD and GORE concur.

Report per Rule 30(e).